UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BRYAN DOUGLAS STEVENSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-00551-SRC |
| | ) | |
| EQUIFAX INFORMATION SERVICES LLC et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### Memorandum and Order

Bryan Stevenson submitted several credit applications only to learn that—according to multiple consumer reporting agencies—he was "deceased" and did not have a credit score. Very much alive, Stevenson sued under the Fair Credit Reporting Act (FCRA). Defendant Comenity Capital Bank, which Stevenson alleges furnished incorrect information to Equifax and other reporting agencies, moves to compel arbitration, relying on identical arbitration provisions in the card agreements for three of Stevenson's credit-card accounts. Stevenson contends that Comenity waived its right to arbitration by acting inconsistently with that right, and alternatively, that his claims fall outside the scope of the arbitration provisions.

**I.     Background**

Comenity issued three store-branded credit cards to Stevenson and serviced the corresponding credit card accounts. Doc. 33 at ¶ 4. Comenity issued the credit cards in November and December of 2020, and closed the accounts in July and August 2021 for lack of payment. Doc. 33 at ¶¶ 8, 11–12, 15–16, 19. Stevenson does not dispute that by making a purchase or failing to cancel the accounts within 30 days, he accepted the terms of the credit-card

agreements.  *See* docs. 33, 36.  Each agreement contains an identical arbitration provision, which provides in relevant part:

> **Review this provision carefully. If you do not reject it in accordance with Paragraph C.1, Right to Reject, below, it will be part of this Agreement and will have a substantial impact on the way you or we will resolve any Claim you or we have against each other now or in the future.**
>
> . . .
>
> Arbitration may be elected by any party with respect to any Claim, even if that party has already initiated a lawsuit with respect to a different Claim.
>
> . . .
>
> **If you or we elect to arbitrate a Claim, you will not have the right to pursue that Claim in court or have a jury decide the Claim.**

Doc. 33-1 at 3; doc. 33-3 at 6–7; doc. 33-5 at 6–7 (emphasis in original).  Each arbitration provision defines "Claim" as:

> [A]ny claim, dispute or controversy between you and us that in any way arises from or relates to this Agreement, the Account, the issuance of any Card, any rewards program and/or any prior agreement or account. "Claim" includes disputes arising from actions or omissions prior to the date any Card was issued to you, including the advertising related to, application for or approval of the Account. "Claim" has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims. It includes disputes based on contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief).

*Id*.  Each arbitration provision also contains an "interpretation" provision, which states:

> This Arbitration Provision shall survive the repayment of all amounts owed under this Agreement, the closing of the Account, any legal proceeding and any bankruptcy to the extent consistent with applicable bankruptcy law. In the event of a conflict or inconsistency between this Arbitration Provision and the applicable arbitration rules or the other provisions of this Agreement, this Arbitration Provision shall govern. This Arbitration Provision replaces any Prior Arbitration Agreement.

*Id*.

## II.    Legal Standard

"Arbitration agreements are governed by the Federal Arbitration Act" (FAA). *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001). The FAA mandates broad enforcement of arbitration provisions:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Likewise, it provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

The FAA establishes a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Accordingly, "courts must place arbitration agreements on an equal footing with other contracts" and enforce them according to their terms. *Id.*; *see also Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) ("[A] court must hold a party to its arbitration contract just as the court would to any other kind."). However, "[a] matter should not be sent to arbitration unless there is a valid agreement to arbitrate and the underlying dispute falls within the scope of that agreement." *Northport Health Servs. of Ark., LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019) (quoting *Telectronics Pacing Sys., Inc. v. Guidant Corp.*, 143 F.3d 428, 433 (8th Cir. 1998)).

Before compelling arbitration, a district court must determine "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that

3

agreement." *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 783–84 (8th Cir. 2016) (quoting *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004)).  The Court, rather than the arbitrator, decides these substantive questions of arbitrability unless the parties "clear[ly] and unmistakabl[y]" delegated that issue to the arbitrator.  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citations omitted).  Because "arbitration is simply a matter of contract," state-law contract principles govern the validity of an arbitration agreement.  *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (citations omitted).  "If a valid and enforceable arbitration agreement exists under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration."  *Id.* (citing *Faber*, 367 F.3d at 1052).

The Eighth Circuit has instructed that a motion to compel arbitration should be "analyzed under a standard akin to [that for] summary judgment."  *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741 (8th Cir. 2014).  Accordingly, the Court must view the evidence in the light most favorable to the non-moving party, resolving all factual disputes in their favor.  *Id.* at 743.  The Court may not compel arbitration where any genuine issue of material fact remains as to whether a valid arbitration agreement exists.  *Id.*

**III.   Discussion**

The Court first addresses whether a valid arbitration agreement exists and whether the claims at issue in the case fall within that agreement.  *Robinson*, 841 F.3d at 783–84.  The parties do not dispute the validity of the arbitration provision contained in the credit-card agreements, or that the FAA applies.  *See* doc. 32 at 5; doc. 36; *see also* doc. 33-1 at 3 ("This Arbitration Provision involves interstate commerce and is governed by the [FAA].").  Rather, Stevenson

4

argues that his claims do not fall within the scope of the arbitration provision.  Alternatively, he argues that Comenity waived its right to arbitration.  The Court addresses each argument in turn.

### A.     Stevenson's claims fall squarely within the scope of the arbitration provision.

Comenity argues that Stevenson's claim—that Comenity reported incorrect credit information in connection with his credit-card accounts and failed to conduct a reasonable investigation—falls within the plain language of the arbitration provision.  Doc. 32 at 5.  Comenity points out that the arbitration provision "is broad and expressly provides that either party may elect to arbitrate *any* claim, dispute, or controversy that *arises from or relates to* the credit card account."  *Id.* at 8 (citations omitted).  Comenity argues that "courts interpret the words 'arise from' or 'relate to' extremely broadly and accord them a presumption of arbitrability."  *Id.* at 8–9 (citing *Zetor N. Am., Inc. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017) and *Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997)).  Comenity also argues that "[c]redit reporting errors clearly relate to and arise out of the Accounts," and that the Court should therefore compel arbitration.  *Id.* at 5.  Finally, Comenity cites numerous district court opinions granting motions to compel arbitration based on identical, or nearly identical, arbitration provisions.  *See id.* at 9–10 (collecting cases).

Stevenson acknowledges that the language in the arbitration provision is broad but argues that if the Court "[l]ook[s] past the 'labels' attached to the Parties' claims, the factual allegations underlying Plaintiff's claims do not touch on matters covered by the arbitration agreements."  Doc. 36 at 11 (citing *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 875 (8th Cir. 2018)).  Stevenson raises two arguments.  First, he argues that his claims against Comenity arose after Comenity closed the credit-card accounts, and states that "[t]he definition of claims does not include disputes arising from actions or omissions after the Accounts have been closed."  *Id.*  Stevenson contends that it is unreasonable to interpret the arbitration provision as applying to

5

"claims arising from Comenity reporting to third party consumer reporting agencies that Plaintiff is dead, long after the Accounts governed by the contract have been closed." *Id.*

As Comenity points out, however, the arbitration provision contains an "interpretation" section which provides:  "This Arbitration Provision shall survive the repayment of all amounts owed under this Agreement, the closing of the Account, any legal proceeding and any bankruptcy to the extent consistent with applicable bankruptcy law."  Doc. 33-1 at 3; doc. 33-3 at 6–7; doc. 33-5 at 6–7.  And even apart from the interpretation provision, the Court agrees with Comenity that Stevenson's proposed temporal limitation lacks merit, as it would render the "opt-out" provision meaningless by enabling a party to evade the arbitration provision "simply by closing the Accounts or waiting for them to be closed."  Doc. 37 at 9 (noting that under the agreements, the credit-card accounts could be closed by Stevenson or Comenity at any time (citing docs. 33-1, 33-3, 33-5)).

The *Parm* case on which Stevenson relies supports the Court's analysis.  There, the plaintiffs used a line of credit to make certain purchases, and agreed to arbitrate any dispute "arising from or relating to the credit offered or provided to" them.  898 F.3d at 872.  The Eighth Circuit noted that such language "constitutes the broadest language the parties could reasonably use to subject their disputes to" arbitration.  *Id.* at 874–75.  In light of that breadth, the court explained that it would "look past the labels the parties attach to their claims" and merely ask "whether the underlying factual allegations simply touch matters covered by the arbitration provision." *Id.* at 875 (citation and internal quotation marks omitted).  Because the factual allegations in that case cleared that low bar, the Eighth Circuit reversed the district court and ordered arbitration of all claims.  *Id.* at 871, 878.  So too here:  the agreement that either party may elect to arbitrate "any claim, dispute, or controversy" that "arises from or relates to" the

6

credit card account," doc. 33-1 at 3, is so broad as to reach Stevenson's claim that Comenity reported incorrect credit information in connection with his credit-card accounts and failed to conduct a reasonable investigation into the matter.

Nevertheless, Stevenson insists that none of his factual allegations "relate to his use of his Accounts with Comenity." Doc. 36 at 12. Stevenson relies on *Anderson v. Hansen*, where the Eighth Circuit held that tort claims involving allegations of sexual assault did not fall within the scope of an arbitration agreement, despite the agreement broadly covering "any dispute arising under or related in any way to" the underlying employment contract. 47 F.4th 711, 714–18. But unlike in that case, the Court agrees with Comenity that the arbitration provision here covers the exact type of claim that Stevenson brings. *See* doc. 37 at 8 (noting that the credit-card agreements state that "[Comenity] may report Account status and payment history to credit reporting agencies, other creditors, and the company whose name brand appears on your Card." (quoting doc. 33-1 at 2; doc. 33-3 at 5; doc. 33-5 at 5)). Further, as Comenity points out, courts frequently find that FCRA claims against credit-card issuers fall within the scope of broad arbitration agreements like the one here. *See* doc. 37 at 8 (collecting cases).

For all these reasons, the Court concludes that Stevenson's FCRA claim against Comenity falls squarely within the scope of the arbitration agreement.

**B.  Comenity did not waive its right to arbitration by acting inconsistently with that right.**

"Arbitration is a waivable contractual right." *Sitzer v. Nat'l Ass'n of Realtors*, 12 F.4th 853, 855 (8th Cir. 2021) (citing *Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016)). Until recently, the Eighth Circuit applied a three-part test to determine whether a party waived its right to arbitration. Under that test, a party waived its right to arbitration if it "(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3)

prejudiced the other party by these inconsistent acts." *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090 (8th Cir. 2007)).  The Supreme Court recently clarified, however, that "prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA." *Sundance*, 596 U.S. at 419.  Accordingly, the waiver inquiry, "stripp[ed of] the prejudice requirement," has become a two-part test.  *See Breadeaux's Pisa, LLC v. Beckman Bros. Ltd.*, 83 F.4th 1113, 1117 (8th Cir. 2023).  Because the parties do not dispute that Comenity knew of its existing right to arbitration, *see* docs. 32–33, 36–37, the Court only addresses whether Comenity acted inconsistently with that right, and concludes that it did not.

"A party acts inconsistently with its right to arbitrate if it [s]ubstantially invoke[s] the litigation machinery before asserting its arbitration right"—for example, when "it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner." *Lewallen*, 487 F.3d at 1090 (citations and internal quotation marks omitted) (alterations in original).  "To safeguard its right to arbitration, a party must do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Id.* (citation and internal quotation marks omitted).  While it considers the totality of the circumstances, the Court focuses on the actions of the party that held the right. *Sundance*, 596 U.S. at 417; *Hooper v. Advance Am., Cash Advance Ctrs. Of Mo., Inc.*, 589 F.3d 917, 922 (8th Cir. 2009).

Stevenson argues that Comenity waived arbitration by "wait[ing] nearly three months to assert that alleged rights [sic], during which time its counsel engaged Plaintiff's counsel with substantive demands for dismissal and produced declarations in support thereof." Doc. 36 at 6.

8

Stevenson argues that certain in-court and out-of-court activities support his waiver argument. He emphasizes the following:

- Comenity received notice of this suit on May 3, 2023;
- Comenity requested a 30-day extension to investigate Stevenson's claims;
- Comenity's counsel filed an entry of appearance and a corporate disclosure statement on May 24, 2023, along with a motion for extension of time to respond to the Complaint; and
- Comenity filed a second motion for extension of time to respond to the Complaint on June 23, 2023.

Doc. 36 at 6. Stevenson asserts that "at no point" during this time did Comenity notify him, or the Court, that Comenity intended to assert its right to arbitrate. Doc. 36 at 6. Stevenson argues that with each of the above filings, "Comenity's counsel implicitly represented to the Court, and to Plaintiff, that it was conducting a reasonable inquiry concerning Plaintiff's claims." *Id.* at 7 (citing Fed. R. Civ. P. 11(b)). According to Stevenson, because Comenity "continued to refrain from asserting any alleged right to arbitrate," Comenity's inquiries "apparently concluded with the determination that Comenity intended to litigate, rather than arbitrate." *Id.*

Stevenson also represents that from May 11 to July 12, 2023, his counsel "engaged in good faith efforts" to resolve the case, and that Comenity's counsel never once mentioned its right to arbitrate. *Id.* Instead, Stevenson says, Comenity requested that Stevenson dismiss his claim against it, raising a "notice" argument. *Id.* Stevenson states that he "agreed to dismiss Comenity on the condition that it execute a sworn declaration stating that it did not receive notice" under the relevant statutory provision. *Id.* Stevenson states that Comenity's counsel, though initially unwilling, asked for an extension of time to file an answer while it "explored" Comenity's willingness to provide the declaration. *Id.*; *see* doc. 30 (requesting a second extension of time for Comenity to respond to the Complaint and explaining that "[t]he parties are currently exploring whether a resolution may be reached without further litigation"). Stevenson

9

asserts that he and Comenity ultimately failed to reach an agreement regarding the language of the proposed declaration, and that Comenity raised the issue of arbitration for the first time on July 12, 2023. *Id.* at 8. Stevenson claims that Comenity's conduct described above is "inconsistent" with its right to arbitrate. *Id.* (citing *Hooper*, 589 F.3d at 922).

Comenity does not dispute Stevenson's assertions regarding the events described above, though Comenity does assert that on July 11, 2023, after the parties had tried for weeks to negotiate the language of the declaration, "Plaintiff refused to dismiss Comenity until conducting discovery." Doc. 37 at 4. Comenity says it responded the next day by providing copies of the credit card agreements and raising the issue of arbitration. *Id.*

As an initial matter, the Court notes that while Comenity provided evidence regarding the underlying credit card agreements, neither party provided evidence regarding the issue of waiver, other than what is revealed on the Court's docket. *See, e.g.*, *Florida v. Georgia*, 138 S. Ct. 2502, 2545 (2018) (Thomas, J., dissenting) ("Of course, statements in briefs are not evidence."). However, because Comenity does not dispute Stevenson's description of events, the Court addresses Comenity's argument that—even assuming it did everything Stevenson says—it did not waive its right to arbitrate because it "did not substantially (or even minimally) invoke the litigation machinery, or act in any way inconsistent with its right to arbitrate." Doc. 37 at 6.

First, Comenity notes that the Eighth Circuit has held that "[a] party substantially invokes the litigation machinery when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner." *Lewallen*, 487 F.3d at 1090. Comenity argues that its actions do not fit any of these criteria. Comenity points out that it moved to compel arbitration approximately 10 weeks after being served with the Complaint. Doc. 37 at 2. Comenity argues that its filings during that

10

time—an entry of appearance, corporate disclosure form, and two motions for extension of time to respond to the complaint—were merely the "minimum papers necessary to avoid default and comply with the Federal Rules of Civil Procedure." *Id.* According to Comenity, these actions "can hardly be described as having 'substantially invoked the litigation machinery,'" noting that accepting Stevenson's argument "would mean that any litigant facing a meritless claim would have to first enforce its right to arbitration before engaging in any discussion of the merits." *Id.* at 2 & n.1. Comenity notes that Stevenson provides no authority for his argument that with each of Comenity's filings it "implicitly represented" its intention to litigate. *Id.* at 3 (citing doc. 36 at 7). The Court agrees with Comenity that its filings do not rise to the level of "[s]ubstantially invoke[ing] the litigation machinery." *Lewallen*, 487 F.3d at 1090 (citation omitted) (first alteration in original).

While filing a motion to dismiss may qualify as "substantially invoking the litigation machinery," *see, e.g.*, *Hooper*, 589 F.3d at 921 (collecting cases), Stevenson fails to provide any support for his argument that Comenity's out-of-court actions—to which Comenity refers as "preliminary discussions seeking voluntary dismissal"—can similarly qualify. Doc. 37 at 4–5. And regarding the length of the alleged delay, Stevenson contends that Comenity's three-month "delay and participation in dismissal discussions . . . constitutes actions inconsistent with any right to arbitrate." Doc. 36 at 8. Leaving aside that Stevenson rounds up by two weeks—Comenity was served on May 3, 2023, and filed its Motion to Compel Arbitration on July 14, 2023, *see* docs. 11, 32—the Court rejects Stevenson's argument. Stevenson does not cite any case supporting a finding that a ten-week time period qualifies as "fail[ing] to move to compel arbitration and stay litigation in a timely manner." *Lewallen*, 487 F.3d at 1091 (there finding that an eleven-month delay was inconsistent with the right to arbitrate); *see also Messina v. N. Cent.*

11

*Distrib., Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016) (concluding that an eight-month delay, among other things, supported a finding that the defendant "substantially invoke[d] the litigation machinery").

The Court further rejects the notion that seeking a 30-day extension to investigate the case and formulate a response, and another 21-day extension to explore settlement, somehow constitutes an unreasonable delay in moving to compel arbitration. Courts encourage, indeed require, investigation before filing pleadings, and further encourage settlement. *See* Fed. R. Civ. P. 11 (requiring that before "presenting to the court a pleading, written motion, or other paper," a party perform "an inquiry reasonable under the circumstances"); Fed. R. Civ. P. 16 (contemplating courts' facilitation of settlement agreements); *see also* Fed. R. Civ. P. 1 (calling for courts to construe the rules so as "to secure the just, speedy, and inexpensive determination of every action and proceeding"). Adopting Stevenson's reasoning would undermine these bedrock principles.

Finally, Stevenson's reliance on *Hooper* is misplaced. In that case, the Eighth Circuit agreed with the district court that the defendant acted inconsistently with its right to arbitrate by filing an extensive motion to dismiss that "sought a final decision from the district court upon the merits of the parties' dispute" and forced the plaintiffs "to litigate substantial issues on the merits." 589 F.3d at 922–23. No such litigation has occurred in this case.

In sum, even assuming that Stevenson's description of Comenity's actions is correct, Comenity's actions do not qualify as "act[ing] inconsistently with [Comenity's] right to arbitrate." *Lewallen*, 487 F.3d at 1090. The Court rejects Stevenson's argument that Comenity has waived its right to arbitrate.

12

### C. The Court stays, rather than dismisses, Stevenson's claim against Comenity.

When the Court compels arbitration, "[t]he FAA generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it." *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) (citing 9 U.S.C. § 3, which states that the district court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"). In *Green*, however, the Court recognized that district courts sometimes rely upon "a judicially-created exception to the general rule which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." *Id.* at 669–70; *see also Sommerfeld v. Adesta, LLC*, 2 F.4th 758, 762 (8th Cir. 2021).

Relying on *Green*, Comenity asks the Court to dismiss Stevenson's claims against it, arguing that all of Stevenson's claims are clearly arbitrable. Doc. 32 at 10–11; doc. 37 at 10. Stevenson responds by arguing that the Court should stay, rather than dismiss, but does not explain why. *See* doc. 36 at 13–14. However, Comenity and Stevenson are not the only parties in this case, and the Court questions whether the "judicially-created exception" recognized in *Green* applies here. *See, e.g.*, *Torres v. Simpatico, Inc.*, 995 F. Supp. 2d 1057, 1065 (E.D. Mo. 2014) ("Where all the claims against *all parties* are subject to arbitration, dismissal of the action is proper" (emphasis added) (citing *Stifel, Nicolaus & Co. v. Freeman*, 924 F.2d 157, 158 (8th Cir. 1991)), *aff'd*, 781 F.3d 963 (8th Cir. 2015). And in any event, even though empowered by precedent with the discretion to dismiss the case, the Court declines to so exercise its discretion given the plain language of § 3 to the contrary and the persuasive reasoning of Judge Shepherd's concurring opinion in *Green*. *See* 9 U.S.C. § 3 ("the court . . . *shall* . . . stay the trial of the action until such arbitration has been had" (emphasis added)); *Green*, 653 F.3d at 77–71 (Shepherd, J., concurring) (calling for fidelity to the mandatory nature of the plain language of § 3).

13

Accordingly, the Court concludes that a stay, rather than dismissal, is appropriate.  *See* 9 U.S.C. § 3.

## IV.   Conclusion

The Court grants Comenity's [32] Motion to Compel Arbitration and stays Stevenson's claims against Comenity pending arbitration.  Stevenson and Comenity must provide a joint status report regarding the progress of arbitration proceedings no later than March 1, 2024, and must also submit a notice updating the Court no later than 10 days following the conclusion of arbitration proceedings.  Stevenson and Comenity must continue to comply with all orders of the Court, provide status updates to the Court, and notify the Court of any development that may affect the stay of this matter.

So ordered this 27th day of December 2023.

_SLR.CR_
_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE